UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| PAUL DOUGLAS GENTRY, | ) | Bankruptcy Case No. 11-11241  EEB |
| SHARON KAY GENTRY, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |

**ORDER DENYING CONFIRMATION DUE TO FAILURE TO INCLUDE
UNEMPLOYMENT COMPENSATION IN CMI CALCULATION**

THIS MATTER comes before the Court on the Debtors' proposed Amended Chapter 13 plan of April 22, 2011 (the "Plan") and the Objection of Sally Zeman, the Chapter 13 trustee in this case (the "Trustee").  The sole issue raised by this Plan is whether the Debtors must include unemployment compensation in their calculation of "current monthly income" ("CMI") on Form 22C.  The Debtors contend that unemployment compensation is "a benefit received under the Social Security Act" and, thus, is expressly excluded from CMI by 11 U.S.C. § 101(10A)(B).  Relying on recent decisions in other jurisdictions, the Trustee disagrees. Despite this legal disagreement, the parties have stipulated that there are no disputed facts and that the Court may decide this matter on the briefs.  They further agree that, if unemployment compensation must be included in the Debtors' income calculation, it will change the Debtors' status to "above median income debtors."  This change in status, they acknowledge, will require the submission of a five-year plan and prevent confirmation of the proposed three-year Plan.

The inclusion or exclusion of unemployment compensation appears to be an issue of first impression in this jurisdiction.  For the reasons stated below, this Court holds that unemployment compensation is a benefit, but not one "received under" the Social Security Act.  Consequently, the Trustee's Objection must be sustained and the Court denies confirmation of the Plan.

**Discussion**

The Court begins its analysis with the language of the statute.  11 U.S.C. § 101(10A)(B) provides:

> (10A) **The term "current monthly income"** ----
>
>> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but **excludes benefits received under the Social Security Act. . . .**

(emphasis added).  At first blush, the highlighted phrase appears clear and unambiguous.  A statutory provision, however, may be ambiguous even though "its intrinsic meaning may be fairly clear, but its application to a particular object or circumstance may be uncertain." 3A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* (7th ed. 2010),  § 70:6, p. 581.  Given the enmeshed relationship between state unemployment compensation programs and the Social Security Act, detailed below, it is far from clear whether unemployment compensation is "received under" the Social Security Act.  Like the Debtors and the Trustee in the present case, courts and commentators alike are sharply divided on this issue, with each offering well reasoned analyses.

The legislative history of the Bankruptcy Abuse Prevention and Consumer Protection Act, enacted in 2005 ("BAPCPA") does not bring clarity to this issue.  In *In re Sorrell*, 359 B.R. 167, 176 (Bankr. S.D. Ohio 2007), the court noted that, because there was no conference committee appointed for this legislation, there was no joint conference statement.  *Id.* There was not even a floor managers' report.  *Id.* The House Judiciary Report added little more than a recitation of the "eventually enacted statutory text."  *Id.* Recognizing this sparse history in connection with the 2005 enactment, the *Baden* court combed through the history surrounding earlier versions of the legislation, dating back to 1997.  *In re Baden*, 396 B.R. 617, 622 (Bankr. M.D. Pa. 2008). In doing so, the court located statements highlighting Congress' primary concerns: "(1) Protecting the Bankruptcy system from being abused by ensuring that those who could afford to pay their debts did pay; and (2) protecting education and retirement savings from being drained by creditors." *Id.* (citations to congressional record omitted).  In 1999, the late Senator Edward Kennedy emphasized the need to protect social security benefits for seniors.  *In re Winkles*, 2010 WL 2680895, at *4-5 (Bankr. S.D. Ill. 2010).  In response, Representative John Conyers moved for an amendment to exclude "benefits received under the Social Security Act from current monthly income." *Id.* Representative Conyers' opening remarks made reference to unemployment insurance, but the primary focus of his remarks was on "seniors living on fixed incomes."  *Id.*

When the statutory language and the legislative history do not shed sufficient light on Congress' intentions, courts resort to commonly recognized rules of statutory construction.  In this case, the Court relies on four specific rules of construction.  First, courts assume that the words in the statute carry their ordinary, contemporary, and common meaning unless expressly stated otherwise. Singer, *supra,* at  § 70:6, p. 577; *In re Annis*, 232 F.3d 749, 753 (10th Cir. 2000).  A court may find guidance in dictionary definitions to determine the ordinary meaning of undefined statutory terms.  Singer, *supra*, at § 70:6, p. 578; *In re James,* 406 F.3d 1340, 1343 (11th Cir. 2005).  The critical word in § 101(10A) is "under."  Is unemployment compensation received "under" the Social Security Act?  The common ordinary meaning of "under" is "required by" or "in accordance with."  Webster's Third New International Dictionary of the English Language Unabridged (1976).  There is a nexus or connection between unemployment compensation and the Social Security Act, as set forth below, but is it a sufficient nexus that the Court should consider the benefits "required by" or paid "in accordance with" the Social Security Act?

Judge Perkins in *In re Kucharz*, 418 B.R. 635 (Bankr. C.D. Ill. 2009) best details the relationship between the Social Security Act and the various state unemployment compensations programs. The Social Security Act of 1935 was enacted as part of President Roosevelt's New Deal legislation. In this legislation, Congress did not adopt a uniform national unemployment insurance system, despite a need for one. Prior to the Social Security Act, many states had been reluctant to adopt a state unemployment insurance system because they were afraid that doing so would put their state at a disadvantage in attracting businesses to the state. *In re Kucharz,* 418 B.R. at 641, n. 5. Rather than impose a national system to counter this reluctance, Congress instead neutralized the stigma that employers might otherwise have associated with a state program. In the Federal Unemployment Tax Act ("FUTA"), 26 U.S.C. § § 3301-3311, Congress imposed a federal excise tax on wages paid by employers. FUTA provided, however, that employers would receive a credit of up to 90% of the federal tax for any contributions the employer pays to a state unemployment compensation fund. *Id.* at 638.

This federal legislation did not require any state to adopt an unemployment compensation program, but instead provided financial incentives to the states. States were granted federal funds to cover the administrative costs associated with such programs. *In re Washington*, 438 B.R. 348, 351-52 (M.D. Ala. 2010) (citing 42 U.S.C. § 1101(c)(1)(A)(I)). The legislation directed the Secretary of Labor to establish research and training programs to assist the states in their administration. *Id.* (citing § 1106(a)(1) and § 1107(a)(1)). It allowed for federal employees to be detailed to a state program for temporary periods and established an Advisory Council to evaluate needs and funding issues. *Id.* (citing § 1107© and § 1108).

These federal benefits did not, and presently do not, come without strings attached. To be eligible for the federal incentives, a state has to demonstrate that its unemployment compensation program meets certain minimal requirements set forth in the Social Security Act. *Id.* (citing 42 U.S.C. § 503(a)). They must pay over to the Secretary of Treasury all of the funds contributed to their programs. *Id.* These funds in turn are contributed to the Unemployment Trust Fund, established under the Social Security Act and invested as a common fund by the Secretary of the Treasury. *Id.* (citing § 1104(a)). The Secretary of Treasury maintains a separate accounting for each state and directs payment to the state as a state submits a requisition. *Id.* (citing § 1104(e)). If a state experiences a shortfall of funds to pay benefits, the state may borrow from the U.S. Treasury. *In re Kucharz,* 418 B.R. at 639 (citing § 1321). The Unemployment Trust Fund includes a special account to cover periods of extended benefits during times of high unemployment. *Id.* at 638 (citing § 1105). Both the Internal Revenue Code and the Federal-State Extended Unemployment Compensation Act of 1970 (the "EUCA") allow Congress to legislate extended benefits beyond the customary 26 weeks of unemployment compensation provided by most states, with the federal government paying 50% of the extended benefits. *Id.*

As a result, there is an undeniably strong connection between the state programs and the federal government. The Social Security Act established many of these connections, but not all of them. FUTA and EUCA contributed significantly as well. Despite the incentives and the associated requirements, however, the state programs remain creatures of state law, and the

3

payments they give to their citizens reflect payments from a state agency. "Unemployment insurance claims are submitted to, evaluated and paid or denied by state officials implementing state law. Appeals are heard by state officials. . . . Benefits are payable as determined under state law and [state] regulations . . ., independent of the SSA and FUTA." *Id.* at 639.

Colorado has established its own unemployment compensation program in the Colorado Employment Security Act (CESA), Colo. Rev. Stat. §§ 8-70-101 to 8-82-105. During the Great Depression, the Colorado Supreme Court ruled that CESA has a "sufficiently independent basis, and that the federal act does not place any limitation upon our interpretation or the guide of interpretation contained in the act itself. . . ." *Industrial Comm'n v. Northwestern Mut. Life Ins. Co.,* 88 P.2d 560, 566 (Colo.1939). The Colorado Supreme Court relied on the United States Supreme Court's interpretation in *Steward Mach. Co. v. Davis*, 301 U.S. 548 (1937), in which the court concluded that the states had a "wide range of judgment . . . as to the particular type of statute to be spread upon their books." *Id.* Thus, this Court concludes that the unemployment compensation benefits received by Mrs. Gentry reflect payments received "under" CESA, despite the fact that Colorado enjoys the same financial incentives and subjects itself to the same requirements set forth in the Social Security Act, FUTA and EUCA.

The second rule of construction relevant to this inquiry is that, when a statute is part of a statutory scheme, courts should read it in context, together with other statutes on the same subject, harmonizing them to the extent possible. Singer, *supra*, at § 70:6, p. 583; McKowen v. I.R.S., 370 F.3d 1023, 1027 (10th Cir. 2004). The Social Security Act is mentioned in other provisions of the Bankruptcy Code, namely sections 362(b)(2)(D), (E), (F), and (G), 522(d)(10)(A), 704(c)(1)(A)(i), and 1302(d)(1)(A)(i). As the Debtors point out, each provision refers to a specific provision of the Social Security Act, rather than the Act in general. They argue that the general reference in § 101(10A) evidences Congress' intent to give this exception to the definition of income the broadest possible reading. This Court is not persuaded to accept this interpretation. If the general reference to the Social Security Act in § 101(10A) was intended to cover unemployment compensation, as well as social security and disability income, then § 522(d)(10)(A) would not have needed to refer separately to exemptions for "a social security benefit, unemployment compensation, or a local public assistance benefit."

Third, a court should not assume that Congress intended to deviate from established applications of judicial interpretation unless the statute effects such a change with specificity. *In re Overby,* 2010 WL 3834647*,* at \*4 (Bankr. W.D. Mo. 2010) (citing *Midatlantic Nat'l Bank v. New Jersey Dept. Of Environmental Protection*, 474 U.S. 494 (1986)). Prior to BAPCPA, courts generally included unemployment compensation in the calculation of a Chapter 13 debtor's income and in determining if they had "regular income" to qualify for Chapter 13 relief. *See, e.g., In re Baden*, 396 B.R. at 623; *In re Hickman*, 104 B.R. 374, 377 (Bankr. D. Colo. 1989). Thus, courts may assume that, had Congress intended to change this well-established interpretation, it would have said so with more specificity than the general reference to the Social Security Act in § 101(10A)(B).

Fourth, remedial legislation, like BAPCPA, should be construed broadly to effectuate its purpose. *In re Kucharz*, 418 B.R. at 642 (citing *Tcherepnin v. Knight,* 389 U.S. 332, 336 (1967)). The means test was intended to screen Chapter 7 individual debtor filings to determine who could pay a significant portion of their debts over time. "Since unemployment compensation is based on historical earnings and is designed to provide a partial replacement for wages that would have been earned, including it in the current monthly income calculation more accurately predicts future income." *In re Winkles,* 2010 WL 2680895, at *2. By dismissing debtors who could contribute to debt repayment, BAPCPA intended to force these debtors into Chapter 13 filings if they wanted bankruptcy relief. The impetus behind this law was to "combat perceived fraud and abusive [Chapter 7] filings." *In re Kucharz,* 418 B.R. at 642. Thus, BAPCPA is remedial in nature. *Id.* Construing the definition of CMI broadly fosters this intended purpose. Excluding unemployment compensation from CMI would allow more debtors to bypass the scrutiny of the means test.

As a corollary, exceptions to remedial legislation should be construed narrowly. *Id.* (citing *E.E.O.C. v. Fox Point-Bayside School Dist*., 772 F.2d 1294, 1302 (7th Cir. 1985)). Thus, any interpretation of § 101(10A) should construe broadly the general provisions referring to "all sources" of income, "without regard to whether such income is taxable," and "any amount paid by any entity" that helps to pay the debtor's household expenses. Conversely, the three exceptions noted in § 101(10A) should be construed narrowly, including the reference to "benefits received under the Social Security Act."

The Court recognizes that two other well-reasoned bankruptcy court decisions and one renowned commentator have interpreted the statute to exclude unemployment compensation from the calculation of CMI. *See In re Sorrell*, 359 B.R. 167 (Bankr. S.D. Ohio 2007); *In re Munger*, 370 B.R. 21 (Bankr. D. Mass. 2007); 2 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* § 101-10A (15th ed. 2010). The Debtors urge this Court to follow these two decisions. More courts disagree with the Debtors' interpretation. In addition to *Baden, Winkles, Kucharz, Washington*, and *Overby,* already cited herein, *see also In re VanDyne*, 2011 WL 3664551 (Bankr. N.D. Ohio 2011); *In re Rose*, 2010 WL 2600591 (Bankr. D. Ga. 2010); and *In re Nance*, 2010 WL 2079653 (Bankr. S.D. Ind. 2010). *See also* E. Wedoff, *Means Testing and the New § 707(b)*, 79 Am. Bank. L.J. 231, 247 (Spring 2005). Absent a binding precedent in this jurisdiction to the contrary, and for all of the reasons set forth above, this Court finds more persuasive the rulings that hold unemployment compensation is not "received under" the Social Security Act.

**Conclusion**

It is hereby ORDERED that the Chapter 13 Trustee's Objection is SUSTAINED and confirmation of the Plan is DENIED. A separate Order will enter setting this case for a further status conference to determine how the Debtors wish to proceed in light of this ruling. In advance of the status conference, the Debtors shall file an Amended Form 22C, conformed to this ruling, and any additional documentation they wish the Court to consider that bears on their "*projected* disposable income" and/or "special circumstances."

DATED this 19th day of December, 2011.

BY THE COURT:

*Elizabeth E. Brown*
Elizabeth E. Brown,
United States Bankruptcy Judge